UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Lynn C.,

    Plaintiff,

    v.                                          Civil Action No. 2:18-cv-197-jmc

Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 13, 14)

Plaintiff Lynn C. brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the second decision of the

Commissioner of Social Security denying her application for Disability Insurance

Benefits (DIB).  Pending before the Court are Plaintiff's motion to reverse the

Commissioner's decision (Doc. 13), and the Commissioner's motion to affirm the

same (Doc. 14).  For the reasons stated below, Plaintiff's motion is DENIED, the

Commissioner's motion is GRANTED, and the Commissioner's decision is

AFFIRMED.

## Background

Plaintiff was 48 years old on her alleged disability onset date of February 24,

2014.  She graduated from high school one year early, and earned her cosmetology

license in 2009.  She has work experience in more than 50 jobs, but none has been

long-lasting or successful other than her part-time job as a school bus driver from

August 2008 until February 2013.  (AR 46, 209, 211, 941, 975.)  Her other jobs
include: a substitute teacher, a school secretary, a school cook, a pharmacy cashier,
a home care aide, an assistant town clerk, a bank teller, a cashier/shipper at a farm
store, an assistant dental clerk, a payroll/benefits clerk, and an office assistant.
(AR 40, 43–46, 209–22.)  Plaintiff has been married for over 30 years, and has four
adult children and four grandchildren.  She lives with her husband in Barre; and as
of June 2018, her daughter, son-in-law, and their children were temporarily living
in a small apartment over Plaintiff's garage.  (AR 977.)

Plaintiff suffers from anxiety, attention deficit hyperactivity disorder
(ADHD), and depression.  She also has panic attacks and phobias, suicidal
thoughts, and sleeping problems.  Plaintiff claims she is unable to work because of
these mental impairments, which manifest in her difficulty concentrating and
focusing, taking direction from supervisors, and getting along with supervisors and
coworkers.  (AR 41, 45, 53, 57.)  On a typical day in April 2016, Plaintiff testified
that once or twice a week she would ride in the van with her husband while he
worked as an automatic door technician.  (AR 43, 53; *see also* AR 973.)  On days
when she stayed home, Plaintiff would paint rocks and shells, care for her
12 chickens,[1] watch television, sleep, and eat dinner with her husband.  (AR 42,
53–54, 57.)  In addition, she had been caring for two of her grandchildren twice a
week, until she had a "falling out" with her daughter.  (AR 43, 52; *see also* AR 613.)
She testified that her grandchildren made her happy and helped keep her stable.

---

[1] By the date of her second administrative hearing in July 2018, Plaintiff no longer had the
chickens, as it was too much work for her to care for them.  (AR 614.)

(AR 53.) In June 2018, Plaintiff reported to a medical source that she spent her days painting, crocheting, gardening, mowing the lawn (on a seated mower), "puttering" around the house, completing household jobs on her husband's lists while he was out working, and going to the local store. (AR 978.) She was anxious about driving and going out in public, preferring to stay home. (*Id.*)

On December 19, 2014, Plaintiff filed the pending DIB application, alleging that, starting on February 24, 2014, she has been unable to work due to depression, ADHD, anxiety, and panic attacks. (AR 185–86, 200.) She explained that she had had problems with the store manager at her prior job, as he was "unbearable to communicate with[,] and [her] anxiety and depression peaked[,] and [thus] [she] . . . left [the job]." (AR 200.) Plaintiff's application was denied initially and upon reconsideration, and she timely requested an administrative hearing. The first hearing was conducted on April 6, 2016 by Administrative Law Judge (ALJ) Thomas Merrill. (AR 34–67.) Plaintiff appeared and testified, and was represented by an attorney. A vocational expert (VE) also testified at the hearing. (AR 59–66.) On June 1, 2016, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act at any time from her alleged disability onset date through the date of the decision. (AR 13–26.) Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–3.) Plaintiff then filed a Complaint with the District Court, and on November 14, 2017, the Court issued an Order granting the Commissioner's assented-to motion for an order remanding the claim for further administrative proceedings. (AR 652.)

On January 9, 2018, pursuant to the Court's remand order, the Appeals Council issued an Order containing specific instructions to the ALJ. (AR 660–61.) Pursuant to that Order, on July 11, 2018, ALJ Merrill held a second administrative hearing on the claim. (AR 601–24.) Plaintiff again appeared and testified, and was represented by an attorney. A VE also testified. (AR 616–23.) On September 13, 2018, the ALJ issued a second decision, again finding that Plaintiff was not disabled under the Social Security Act at any time from her alleged disability onset date through her date last insured of June 30, 2018. (AR 554–77.) Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 647–49.) Having exhausted her administrative remedies, Plaintiff filed the pending Complaint with this Court on December 5, 2018. (Doc. 6.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her

impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, in his September 2018 decision, ALJ Merrill first determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of February 24, 2014. (AR 556.) At step two, the ALJ found that Plaintiff had the severe impairments of anxiety disorder and ADHD. (AR 557.) Conversely, the ALJ found that Plaintiff's depression and panic attacks were not severe. (*Id.*) At step three, the ALJ found

that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 558–62.)

Next, the ALJ determined that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] has the ability to understand and remember 1–4 step instructions.  She can sustain concentration, persistence[,] and pace to perform such activities for 2[-]hour[] periods throughout an 8-hour workday and a 40-hour workweek." (AR 562.)  Given this RFC, the ALJ found that Plaintiff was able to perform her past relevant work as a bus driver and a general office clerk.  (AR 576.) Alternatively, based on testimony from the VE, the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy, including the jobs of office cleaner, laundry sorter/folder, and janitor/cleaner. (AR 576–77.)  The ALJ concluded that Plaintiff had not been under a disability from her alleged disability onset date of February 24, 2014 through her date last insured of June 30, 2018.  (AR 577.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

### I. Prior ALJ Decision and Appeals Council Remand Order

Plaintiff argues that the ALJ violated the law of the case doctrine and the rule of mandate by changing his evaluation of nonexamining agency consultant Dr. Ellen Atkins's opinions between the time of his June 2016 and September 2018

decisions, and by failing to follow the January 2018 Appeals Council's Order remanding the claim with instructions to give further consideration to the nonexamining consultant opinions and, if needed, provide additional evidence or clarification of those opinions. (Doc. 13-2 at 2–5; *see* AR 661.) In her reply brief, Plaintiff summarizes her argument as follows: "By giving 'little weight' or 'no weight' to all of Dr. Atkins'[s] opinions and 'substantial weight' to some of the earlier opinions of [nonexamining agency consultant] Dr. [Joseph] Patalano, all of which the ALJ failed to mention in his prior decision, the ALJ has improperly relitigated the case, thus violating the mandate rule." (Doc. 15 at 3.)

It is well settled that an ALJ's failure to follow a court's remand order is reversible error, *see Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."); *Carrillo v. Heckler*, 599 F. Supp. 1164, 1168 (S.D.N.Y. 1984); and that an ALJ's failure to follow an order of the Appeals Council is also reversible error, *see* 20 C.F.R. § 404.977(b) ("The [ALJ] shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."); *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371–72 (W.D.N.Y. 2009) ("[An] ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand."). Two legal doctrines require ALJs to follow remand orders of the court and the Appeals Council: (1) the doctrine of the law of the case, under which "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case," *Thomas v. Bible*,

983 F.2d 152, 154 (9th Cir. 1993); *see Brachtel v. Apfel*, 132 F.3d 417, 419–20

(8th Cir. 1997); and (2) the rule of mandate, which requires that "on remand, the

lower court's actions must be consistent with both the letter and the spirit of the

higher court's decision," *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal.

2005); *see Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175

(2d Cir. 2014).

Here, the ALJ did not violate the law of the case doctrine or the rule of

mandate. The January 2018 Appeals Council Order states as follows, in relevant

part:

> The [ALJ] . . . gave "substantial weight" to the opinion[s] of the State agency medical consultant, Dr. Atkins[, who] . . . found that [Plaintiff] . . . could "sustain [concentration, persistence, or pace] for 2 hours over [a] typical work day/week in *low production* norm settings." Despite assigning substantial weight to this opinion, the ALJ did not include this production limit in the assessed [RFC], did not present this limitation in his hypothetical questions to the [VE,] and did not explain why this restriction was not included. . . . Substantial evidence does not support that [Plaintiff] could perform the jobs identified if Dr. Atkins['s] production limitation were included in the RFC. *Further consideration of Dr. Atkins['s] opinion is necessary.*

(AR 660 (second emphasis added) (citations omitted).) The Appeals Council ordered

that, on remand, the ALJ "*will*: [g]ive further consideration to the nonexamining

source opinion pursuant to the provisions of 20 CFR [§] 404.1527, and explain the

weight given to such opinion evidence," and "*may* request [that] the nontreating

source provide additional evidence and/or further clarification of the opinion."

(AR 661 (emphases added).)

In his September 2018 decision, the ALJ did precisely what the Appeals

Council Order instructed him to do: give further consideration to the nonexamining

medical source opinions, including the opinions of agency consultants Drs. Atkins and Patalano, under the provisions of 20 C.F.R. § 404.1527, and explain the weight given to those opinions. (*Compare* AR 573–75 *with* AR 661.) The Order did not *require* the ALJ to request additional evidence or clarification; rather, the Order states that the ALJ "may" seek additional evidence or further clarification, "[a]s appropriate." (AR 661.) The ALJ apparently did not find it appropriate or necessary to seek additional evidence or clarification, and the Court finds no error in that finding. As for the ALJ's consideration of the opinions of Drs. Atkins and Patalano, the ALJ found that they were entitled to "substantial weight," except that their respective opinions that Plaintiff "is limited from working with the public" and "from performing tasks that required 'sustained interaction with many coworkers'" were given "little weight" (AR 573, 574), and Dr. Atkins's opinion that Plaintiff is "limited to a low production norm setting" was given "no weight" (AR 574).

Despite Plaintiff's argument to the contrary, the Appeals Council Order does not mandate that the ALJ recontact Dr. Atkins regarding her limitation to "low production norm settings"; rather, the Order requires the ALJ to consider and explain why he did not include that particular limitation in his RFC determination while at the same time assigning substantial weight to Dr. Atkins's opinions, and possibly recontact Dr. Atkins, if necessary. (AR 660.) As noted above, the Order states: "Substantial evidence does not support that [Plaintiff] could perform the jobs identified *if Dr. Atkin[s]'s production limitation were included in the RFC. Further consideration of Dr. Atkins['s] opinion is necessary.*" (*Id.* (emphasis added)) The

record reflects that, on remand, the ALJ did in fact give further consideration to Dr. Atkins's opinion that Plaintiff was limited to jobs involving "low production norm settings," ultimately determining—after an extended discussion with the VE at the July 2018 administrative hearing—that the limitation did not apply in this case, because all of the selected jobs (bus driver, janitor, office cleaner, laundry sorter/folder, and general office clerk) had "low production norm settings," as they do not involve assembly line situations where there is a product or device that is being assembled or produced in a fast-paced environment.[2] (AR 619–20; *see* AR 576–77.) The Court finds no error.

In the context of her law of the case/rule of mandate argument, Plaintiff correctly points out (*see* Doc. 13-2 at 3 n.1; *id.* at 4) that the ALJ misstated in his decision that Dr. Patalano assessed that Plaintiff was "capable of routine collaboration with supervisors and coworkers" (AR 573), when in fact, Dr. Patalano assessed that Plaintiff was "capable of routine collaborating with supervisor[s] and *limited interaction with coworkers*" (AR 76 (emphasis added)). The Court finds this misstatement harmless because the jobs identified by the VE (other than the bus driver job) were limited to those allowing for "moderate difficulty interacting appropriately with supervisors, co[]workers, and the public" (AR 696), which would

---

[2] At the hearing, the VE testified that he was unsure what the term "low production norm settings" means, and that it is not a term used in the DOT. (AR 617–18.) He stated that if the term is defined as a "performance standard," it could be said that the listed jobs had "production requirements" because they have specific performance requirements or job expectations, such as transporting people from point A to point B, cleaning a certain number of rooms in a given shift, and completing a particular number of loads of laundry. (AR 618–22.) But if the term is defined as its ordinary meaning would suggest—to require the production or assembly of a particular product, *see Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.")—the VE stated that the listed jobs would not have high production norms. (AR 619–20.)

encompass jobs requiring only limited interaction with coworkers. *See Green v. Astrue*, 390 F. App'x 620, 622 (8th Cir. 2010) (moderate difficulties in social functioning were adequately described in hypothetical restricting claimant to limited interaction with the public and coworkers); *Hilkemeyer v. Barnhart*, 380 F.3d 441, 446–47 (8th Cir. 2004) (limited work with coworkers and supervisors adequately described moderate limitations in social functioning); *Huynh v. Astrue*, Civil No. 07–cv–02020–LTB, 2009 WL 5166255, at *5 (D. Colo. Dec. 28, 2009) ("moderate difficulty in social . . . functioning" accounts for ALJ finding that Plaintiff was "limited to work that required only . . . limited interaction with supervisors, coworkers, and the general public"). Further, on the same page of his report, Dr. Patalano also opined that Plaintiff was "[n]ot significantly limited" in her "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (AR 76.)

## II.    RFC Determination

Plaintiff next claims the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff contends that: (1) the ALJ did not evaluate Dr. Patalano's (and Dr. Atkins's) limitation of Plaintiff to only unskilled work and instead found that Plaintiff could perform the semi-skilled jobs of bus driver and general office clerk (Doc. 13-2 at 5); (2) the ALJ improperly gave little weight to Dr. Patalano's (and Dr. Atkins's) opinion that Plaintiff "is limited from working with the public and from performing tasks that required sustained interaction with many coworkers" (*id.* at 6 (quoting AR 573)); and (3) the ALJ's finding that Plaintiff has only mild limitations in understanding, remembering, or

applying information; and adapting and managing oneself "fails" (*id.*). As discussed below, the Court rejects these arguments and finds that the ALJ's RFC determination is supported by substantial evidence.

First, the ALJ's failure to adopt the limitation of Plaintiff to only unskilled work, even if erroneous, caused no prejudice to Plaintiff because the jobs identified at step five in the ALJ's decision require only unskilled work. After finding at step four of the sequential evaluation that Plaintiff could perform her past relevant work as a bus driver and a general office clerk, which are semi-skilled jobs (AR 60; *see* Doc. 13-2 at 5 n.2), the ALJ made the alternative finding at step five that Plaintiff could also perform other jobs existing in the national economy, including the jobs of office cleaner, laundry sorter/folder, and janitor/cleaner (AR 576–77), which are unskilled jobs (AR 62; *see* Doc. 15 at 5.)

Second, the ALJ did not err in giving "little weight" (AR 573) to Dr. Patalano's (and Dr. Atkins's) opinion that Plaintiff is "limited from working with [the] public and [from performing] tasks that demand sustained interaction with many coworkers" (AR 76, 89).[3] Plaintiff argues that this finding is not supported by the record because "all the medical professionals found at least moderate limitations in social functioning," and the ALJ "improperly set his own expertise against theirs." (Doc. 13-2 at 6.) As noted in the prior section, however,

---

[3] The Court finds no error in the ALJ's decision to adopt certain portions of Dr. Patalano's and Dr. Atkins's opinions, while rejecting or giving less weight to other portions of those opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

the VE testified at the administrative hearing that each of the jobs identified by the ALJ at step five of his decision allows for "moderate" limitations in social functioning. (AR 577, 693–95.) Moreover, substantial evidence—cited and discussed in the ALJ's decision—supports the ALJ's finding that Plaintiff is only "mild[ly]" limited in her ability to interact with others. (AR 560; *see* AR 564–68, 570–71, 573, 575.) Specifically, during the relevant period, Plaintiff had relationships with her husband, children, and grandchildren; she cared for her grandchildren on a regular basis; she visited her mother a couple of times each day when she resided at a nursing home; she drove a school bus full of children for about 14 years, remembering the names of all the students, eventually losing the job due to her refusal to complete a urine drug screen when requested, not due to any social problems; she held other jobs requiring interaction with the public and customers, including as a bank teller and a pharmacy assistant, with no credible evidence that she was fired due to problems socializing; she attended her son's graduation party; she socialized at her sister's house; she went on a family camping trip and other family vacations; and she went on a cruise with extended family. (*Id.*; *see* AR 209–16, 224, 227, 358, 506, 508, 514–15, 520–22, 530–31, 613, 675, 866, 880, 971–72, 974.) Moreover, Plaintiff testified at the July 2018 administrative hearing that, although she does not like to have friends visit with her, she does have neighbors who "stop by or something." (AR 686.) In addition, as the ALJ also noted, Plaintiff reported to consultative psychologist Dr. Kathryn Rickard in April 2015 that she was comfortable with face-to-face social contact and had no social anxiety; and Dr. Rickard opined that Plaintiff "retained an[] unimpaired ability to

relate to others." (AR 405; *see* AR 403, 560.) Similarly, in March 2015, Paul Reed, LICSW, recorded that Plaintiff "related easily and intelligently" and showed no cognitive impairment. (AR 393.) Counseling notes with Marek Pyka, MA, indicate that Plaintiff had familial relationship problems but nonetheless attended family birthday parties, spoke at a funeral, and went on a vacation. (AR 994, 996, 1009–10.) Although Plaintiff has self-reported that she has problems tolerating criticism in the workplace, there is substantial evidence in the record to support the ALJ's finding that her limitations in social interaction are mild.

Likewise, there is substantial evidence to support the ALJ's finding that Plaintiff was able to "understand and remember 1–4 step instructions" (AR 562), notwithstanding Plaintiff's third RFC-related argument that the ALJ's finding that Plaintiff has only mild limitations in understanding, remembering, or applying information; and adapting and managing oneself, "fails" (Doc. 13-2 at 6). The only evidence cited by Plaintiff in support of this argument (*see id.* at 6–7) is examining consultant Dr. Gregory Korgeski's opinion that Plaintiff "will have difficulty mastering and recalling detailed instructions" and "does not have the ability to adapt consistently . . . [or] to self-regulate her mood" (AR 979–80). But Dr. Korgeski did not treat Plaintiff on a continual basis, examining her on only one occasion. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("a physician who only examined a claimant 'once or twice' did not see that claimant regularly and did not develop a physician/patient relationship with the claimant") (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983)); 20 C.F.R. § 404.1527(c)(2) ("[M]ore weight" should be given to medical opinions that are from claimant's treating

sources, as "these sources are . . . most able to provide a detailed, longitudinal picture . . . and may bring a unique perspective . . . that cannot be obtained from the objective medical findings alone or from reports of individual examinations."). Moreover, as the ALJ explained in his decision (*see* AR 570, 574–75), Dr. Korgeski himself noted at the end of his report that he did not have access to Plaintiff's full record and his opinions were thus "primarily derived" from Plaintiff's self-report, which the Doctor "c[ould not] verify the accuracy of," along with his clinical observations of Plaintiff (AR 984).

In fact, the ALJ explained in detail that Dr. Korgeski was unaware of many relevant facts that are documented elsewhere in the record, lending support to the ALJ's decision to afford only "partial weight" (AR 574) or "limited weight" (AR 575) to Dr. Korgeski's opinions regarding Plaintiff's limitations. *See* 20 C.F.R. § 404.1527(c)(3) ("We will evaluate the degree to which . . . medical opinions consider *all of the pertinent evidence* in your claim . . . ." (emphasis added)); SSR 96-6P, 1996 WL 374180, at *3 (S.S.A. July 2, 1996) ("[T]he opinion of a [s]tate agency . . . psychological consultant . . . may be entitled to greater weight than a treating source[']s medical opinion if the [s]tate agency . . . p[s]ychological consultant's opinion is based on a review of *a complete case record* that includes a medical report from a specialist in the individual's particular impairment[,] which provides more detailed and comprehensive information than what was available to the individual's treating source." (emphasis added)). The ALJ explained:

> [Plaintiff] reported to Dr. Korgeski that she could not go to family events o[r] funerals, contrary to her reports to Mr. Reed given at the time of those events. [Plaintiff] reported that the "difficult[y]" reported to

Mr. Greenleaf was a criticism by the manager of Rite Aid that "didn't fly with me" and she told the manager what she thought and walked out. . . . [Plaintiff] made no mention of these events to Ms. Meyer, who she saw during the three-month period [when] she worked and quit this job, which was just prior to going on vacation. [Plaintiff] reported to Dr. Korgeski that she drove a school bus without problem for 14 years and knew the names of all the children on the bus, and has not thought of doing work since. [Dr. Korgeski] was unaware[, however,] of [Plaintiff's] testimony [that she] . . . lost [the] bus driver job [because she] le[ft] prior to doing a urine drug test[]. . . . There was no mention [to Dr. Korgeski] of [Plaintiff's] camping, snowmobile riding, vacations with her sisters, going on a cruise, or speaking at funerals.

(AR 575) (citations omitted). Earlier in his decision, the ALJ explained in detail his finding that Plaintiff was only mildly impaired in her ability to adapt and manage herself:

The record contains no in-patient or urgent mental health treatment. There is no evidence, based on [Plaintiff's] history or examination, that [Plaintiff] would have an inability to control . . . her behavior or work around others. She presents as well[-]groomed and appropriately dressed. She has no problem with personal care. [She] babysits her grandchildren, does household chores, [and] does yard work that includes mowing the lawn and gardening[;] she cares for pets, and has hobbies that include crocheting and painting. She reports [that] she is able to manage [her] finances. She maintains her own personal care and reports that she exercises regularly. Although she has symptoms that wax and wane, the record does not support a finding of more than mild limitation in this area. The evidence is consistent with no more than mild impairment in the ability to respond to demands, adapt to change, managing psychologically based symptoms, distinguish between acceptable and unacceptable performance, set realistic goals, maintain hygiene[,] and be aware of normal hazards.

(AR 562; *see* AR 224–27, 230.) Substantial evidence supports the ALJ's analysis, and Plaintiff has shown no error.

Finally, it is noteworthy that much of the ALJ's decision (and RFC determination) is founded on the ALJ's assessment that Plaintiff's allegations of "pain and limitations that are so severe that [she] cannot perform any work on a

regular and continuing basis," are "not fully support[ed]" by the record. (AR 563.)
The Court finds that this assessment of the credibility of Plaintiff's subjective
reporting of her impairments is supported by substantial evidence, and that, given
the limited scope of judicial review on this issue, there is no reason to disturb the
ALJ's assessment. *See Pietrunti v. Dir., Office of Workers' Comp. Programs*,
119 F.3d 1035, 1042 (2d Cir. 1997) ("[c]redibility findings of an ALJ are entitled to
great deference and therefore can be reversed only if they are patently
unreasonable" (internal quotation marks omitted)); *Aponte v. Sec'y of Health &
Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (holding that if the Commissioner's
findings are supported by substantial evidence, the court must uphold ALJ's
decision to discount claimant's subjective complaints); *Carroll v. Sec'y of Health &
Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (holding that it is the function of
the Commissioner, not the court, to "resolve evidentiary conflicts and to appraise
the credibility of witnesses, including the claimant").

For these reasons, the Court rejects Plaintiff's arguments regarding the ALJ's
RFC determination.

## III. Analysis of Medical Opinions

Next, Plaintiff asserts that the ALJ erred in his evaluation of the medical
opinions of nonexamining agency consultant Dr. Patalano; examining psychologist
Dr. Korgeski; and treating providers James Greenleaf, ARNP (Advanced Registered
Nurse Practitioner); Tara Meyer, FNP (Family Nurse Practitioner); and Paul Reed,
LICSW (Licensed Independent Clinical Social Worker). (Doc. 13-2 at 7–10.) For the
reasons explained above, the Court finds no error in the ALJ's analysis of the

opinions of Dr. Patalano and Dr. Korgeski. (*See* AR 573–75.) To reiterate, the ALJ

properly afforded only partial/limited weight to Dr. Korgeski's opinions on the

grounds that: (1) Dr. Korgeski examined Plaintiff only one time; (2) Dr. Korgeski

made his opinions without having access to the full record; and (3) Dr. Korgeski's

opinions are mostly based on Plaintiff's self-reporting, much of which is inconsistent

with the record as a whole.[4] (AR 574–75.) With respect to Dr. Patalano's opinions,

the Court finds that substantial evidence—discussed in the ALJ's decision—

supports the ALJ's decision to afford "substantial weight" to certain portions of

Dr. Patalano's opinions while affording "little weight" to others. (AR 573.) *See*

*Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (holding it is within the

province of ALJ to credit portions of a medical opinion while declining to accept

other portions of same opinion).

Plaintiff argues in her reply brief that the ALJ should have given more

weight to Dr. Atkins's June 2015 opinions than to Dr. Patalano's April 2015

opinions because "Dr. Atkins considered evidence from the treating nurse

practitioner and therapist that had not been before Dr. Patalano." (Doc. 15 at 2

---

[4] The ALJ considered the proper factors in analyzing these opinions. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *id.* at (c)(3) ("We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources."); *id.* at (c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Of note, the applicable regulation, 20 C.F.R. § 404.1527, as well as other regulations at issue in this case, has been revised effective March 27, 2017. *See generally Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). But because Plaintiff filed her claim before the new regulations went into effect, the Court reviews the ALJ's decision under the earlier regulations.

(citing AR 88).)  Plaintiff cites to the page from Dr. Atkins's opinion that indicates

Dr. Atkins considered the March 19, 2015 opinions of Reed and the March 12, 2015

opinions of Meyer.  The record reveals that Dr. Patalano considered these same

opinions of Reed and Meyer (AR 75), and thus this argument is unpersuasive.

Later in the brief, Plaintiff asserts that, when Dr. Patalano made his opinions in

April 2015, he had not considered "most of" the records of Dr. Rickard, Social

Worker Reed, Nurse Practitioner Greenleaf, "Ms. Sicard" (presumably referring to

"C. Sicard," referenced at AR 979), and Marek Pyka, MA.  (Doc. 15 at 7.)  The Court

finds this argument unpersuasive as well, because the cited records neither raise

doubts as to the reliability of Dr. Patalano's opinions nor reveal a new diagnosis or

worsening of Plaintiff's condition since Dr. Patalano issued his opinions.  (*See, e.g.*,

AR 396, 399, 407, 413–15, 428, 434, 437–38, 452–53.)  *See Camille v. Colvin*, 652 F.

App'x 25, 28 n.4 (2d Cir. 2016) ("[n]o case or regulation . . . imposes an unqualified

rule that a medical opinion is superseded by additional material in the record,"

when the additional evidence raises no doubts as to the reliability of that opinion);

*Charbonneau v. Astrue*, Civil Action No. 2:11–CV–9, 2012 WL 287561, at *7 (D. Vt.

Jan. 31, 2012) (where agency consultant opinions are supported by the record and

there is no evidence of a new diagnosis or worsening of claimant's condition after

consultant opinions were made, ALJ may rely on them).

Plaintiff also points to no error in the ALJ's analysis of the opinions of

treating Nurse Practitioners Greenleaf and Meyer, and Social Worker Reed.  The

ALJ gave "no weight" to parts of these opinions and "limited weight" to other parts,

respectively.  (AR 571–73.)  As the ALJ explained, to the extent that portions of

these records contain assessments more severe than those included in the ALJ's RFC determination, they are not consistent with the record as a whole. (*Id*.) *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Moreover, the ALJ properly found that Meyer's opinion that Plaintiff's reported significant lifelong symptoms are "disabling" and have "prevented her from maintaining gainful employment" (AR 379), is entitled to "no weight" (AR 571). Opinions like this, i.e., "statement[s] by a medical source that [the claimant is] 'disabled' or 'unable to work,'" may be disregarded by ALJs, because, if accepted, they "would direct the determination or decision of disability," which is an "issue[] reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(1); *see Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) (holding that doctor's opinion that claimant was "'temporarily totally disabled'" was entitled to no weight, "since the ultimate issue of disability is reserved for the Commissioner").

Also relevant to the ALJ's analysis of the opinions of Nurse Practitioners Greenleaf and Meyer, and Social Worker Reed; as the ALJ noted in his decision (AR 571), none of these providers is a licensed physician or other "acceptable medical source" under the regulations. *See* 20 C.F.R. § 404.1513(a).[5] Rather, as nurse practitioners and a social worker, they are considered "other sources." *Id.* at § 404.1513(d). Although the regulations require ALJs to consider the same factors

---

[5] Effective March 27, 2017, 20 C.F.R. § 404.1513 has been amended. Nonetheless, as explained in Footnote 3, *supra*, with respect to 20 C.F.R. § 404.1527, because Plaintiff's claim was filed before the new regulations went into effect, the Court reviews the ALJ's decision under the earlier regulations.

in evaluating the opinions of other sources as are considered in evaluating the opinions of acceptable medical sources (as the ALJ did here, focusing mostly on the other source opinions' consistency with the record as a whole) (*see* AR 571–73), *id.* at § 404.1527(f), other source opinions do not require the same special consideration that acceptable medical source opinions require, *id.* at §§ 404.1513(a)(2), 404.1527(c)(2).  *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("Information from . . . other sources cannot establish the existence of a medically determinable impairment . . .[;] there must be evidence from an acceptable medical source for this purpose." (internal quotation marks omitted)).

Plaintiff makes a cursory argument that the ALJ "cherry-picked" evidence to defend his RFC determination, but the Court finds the argument unsupported.  *See Matta*, 508 F. App'x at 56–57 (holding ALJ did not "cherry-pick[] evidence of plaintiff's 'good days' without regard to . . . plaintiff's severely fluctuating symptoms," and that "substantial evidence in the record supports the ALJ's conclusion that this plaintiff, with the proper treatment, could perform work on a regular and continuing basis").  Likewise, Plaintiff's assertion that the ALJ erred in giving no weight to Greenleaf's November 2015 assignment of a Global Assessment of Functioning (GAF)[6] score of 40 to Plaintiff is unsupported.  (*See* AR 466.)  As

---

[6] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008) (alteration in original) (quoting *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (DSM–IV)).  In 2013, however, the American Psychiatric Association published the DSM–5, which "drop[s]" reference to the GAF "for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) (DSM–5).

noted by the ALJ (AR 572), a low GAF score, in and of itself, does not demonstrate that an impairment significantly interfered with a claimant's ability to work. *Parker v. Comm'r of Soc. Sec. Admin.*, Civil Action No. 2:10–CV–195, 2011 WL 1838981, at *6 (D. Vt. May 13, 2011) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score.")). Rather, a claimant's GAF score is only "one factor" to consider in determining his ability to perform substantial gainful activity. *Parker*, 2011 WL 1838981, at *6 (citation omitted); *Ortiz Torres v. Colvin*, 939 F. Supp. 2d 172, 184 (N.D.N.Y. 2013). Also noteworthy, a GAF score generally assesses the claimant's level of functioning "at the time of the evaluation" only.[7] DSM-IV at 30. The ALJ properly considered Greenleaf's assignment of a GAF score of 40 to Plaintiff on November 3, 2015; and substantial evidence supports his decision to give that score "no weight." (AR 572.)

## IV.    Severity of Depression and Panic Attacks

Finally, Plaintiff argues that the ALJ erred in finding that her depression and panic attacks are not severe impairments. (Doc. 13-2 at 11–12.) As noted above, at step two of the sequential analysis, the ALJ found that Plaintiff's anxiety disorder and ADHD are severe but her other impairments, including her depression and panic attacks, are not. (AR 557.) Plaintiff claims the latter finding is erroneous because the medical evidence demonstrates that she was consistently diagnosed

---

[7] On October 29, 2014, another of Plaintiff's treating providers assigned a GAF score of 50 to Plaintiff (AR 549), indicating a much higher level of functionality than that assigned to Plaintiff by Greenleaf on November 3, 2015.

with ADHD, panic attacks, and recurrent major depressive disorder; and that her treating providers encouraged her to apply for disability benefits. (Doc. 13-2 at 11.) Plaintiff further points out that Dr. Korgeski assessed that she had chronic depressive disorder with probably seasonal fluctuations in severity, and that "the records show that [Plaintiff] has 'multiple phobias,' panic attacks, and panic disorder with agoraphobia." (*Id.* at 11–12.) Even accepting these facts as true, it is well settled that the mere diagnosis of a condition "says nothing about [its] severity," *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988), and "is not sufficient" to prove disability, *Williams v. Bowen*, 859 F.2d 255, 259 (2d Cir. 1988). Stated differently, "[t]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, itself, sufficient to deem a condition severe." *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008) (internal quotation marks omitted). The ALJ adequately explained his finding that Plaintiff's depression and panic attacks are not severe:

> [Plaintiff] alleged disability in part due to depression and panic attacks. While [she] has been treated for symptoms of depression, screenings have primarily revealed only mild symptoms. State [a]gency reviewing psychologists Joseph Patalano, PhD and Ellen Atkins, PhD reviewed the then existing record and concluded that [Plaintiff's] depression is not "severe" within the meaning of the Social Security Act . . . . The record includes no contradictory evidence from a medically acceptable source . . . . Therefore, the undersigned finds that [Plaintiff's] alleged depression is "not severe." [Plaintiff's] alleged panic attacks also are not severe. [Plaintiff] testified that she only "sometimes" experienced undefined panic attacks. The undersigned has considered fully [Plaintiff's] mental functioning regardless of diagnoses.

(AR 557 (citations omitted).)

Furthermore, it cannot be said that Plaintiff suffered any prejudice from the ALJ's omission of Plaintiff's depression and panic attacks in his list of severe impairments at step two of the sequential evaluation, because the ALJ continued the disability analysis past that step and accounted for all of Plaintiff's impairments in combination in determining Plaintiff's RFC. (AR 558–76.) *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding alleged step-two error harmless because ALJ considered impairments during subsequent steps).

## Conclusion

For these reasons, the Court DENIES Plaintiff's motion (Doc. 13), GRANTS the Commissioner's motion (Doc. 14), and AFFIRMS the decision of the Commissioner. The Clerk shall enter judgment in favor of the Commissioner.

Dated at Burlington, in the District of Vermont, this 18th day of September 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge